## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **JENNIFER L. HAAS**<br>150 South Main Street<br>Prospect, Ohio 43342 | Case No.: 3:17-cv-2115 |
| | Judge: |
| **PAUL I. HAAS, JR.**<br>150 South Main Street<br>Prospect, Ohio 43342 | **COMPLAINT FOR DAMAGES** |
| Plaintiffs, | **JURY DEMAND ENDORSED HEREON** |
| vs. | |
| **GREGORY FUNDING LLC**<br>c/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219 | |
| Defendant. | |

Plaintiffs, Jennifer L. Haas and Paul I. Haas, Jr., by and through counsel, for their Complaint against Defendant Gregory Funding LLC, state as follows:

### INTRODUCTION, PARTIES, JURISDICTION, AND VENUE

1.     Plaintiffs Jennifer L. Haas and Paul I. Haas, Jr. (referred to hereinafter as "Plaintiffs") are the owners of real property and improvements located at and commonly known as 150 South Main Street, Prospect, Ohio 43342 (the "Home").

2.     Defendant Gregory Funding LLC ("Gregory") is a limited liability company established under the laws of the State of Oregon, who is registered with the Ohio Secretary of State. Gregory maintains its principal place of business at 9400 Southwest Beaverton-Hillsdale

1

Highway, Suite 145, Beaverton, Oregon 97005. Gregory services mortgage loans across the United States, including servicing mortgages for properties in the State of Ohio.

3.      Plaintiffs purchased the Home on October 31, 2006, as their primary, principal residence and financed the Home by receiving a loan as evidenced by a note (the "Note") and a mortgage on the Home that allegedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan"). A copy of the Loan documents are attached as ***Exhibit 1***.

4.      Plaintiffs find themselves named as defendants in a state court foreclosure case through no fault of their own. They have timely paid each and every payment on their Loan according to the Loan Modification Agreement (the "LMA"), entered into on November 14, 2014 and recorded on January 20, 2015 with the Marion County, Ohio Recorder, and have otherwise fully lived up to their obligations. A copy of the Loan Modification Agreement is attached as ***Exhibit 2***. On information and belief, the mortgage loan servicers responsible for Plaintiffs' Loan failed to properly credit Plaintiffs' payments towards the Loan. Plaintiffs have done everything in their power to have these corrected, but all efforts have been met with callous indifference. In order to resolve the errors associated with the Loan, Plaintiffs reasonably believe that they have no other option but to bring this case.

5.      Plaintiffs' Loan was originated by Taylor, Bean & Whitaker Mortgage Corp. and subsequently assigned to BAC Home Loans Servicing, L.P., fka, Countrywide Home Loans Servicing, L.P. on September 16, 2010. The Loan was assigned on July 6, 2013 to the Secretary of Housing and Urban Development, who then assigned the Loan to RBS Financial Products Inc. on July 24, 2013. The Loan was again assigned to Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as owner trustee on behalf

2

of RBSHD 2013-1Trust ("RBSHD") on November 22, 2013. The Loan was later assigned to AJX Mortgage Trust I, a Delaware Trust, Wilmington Savings Fund Society, FSB, Trustee ("AJX") on September 11, 2015. The Loan was again assigned to U.S. Bank National Association, as Indenture Trustee on Behalf of and with Respect to Ajax Mortgage Loan Trust 2016-A, Mortgage-Backed notes, Series 2016-A ("U.S. Bank") on May 6, 2016.

6.      Gregory has serviced the Loan since November 10, 2015, when servicing was transferred from Rushmore Loan Management Services, LLC ("Rushmore").

7.      At all relevant times, Gregory acted with the full authority of and as the servicing agent for the relevant owners of the Loan, AJX and U.S. Bank.

8.      Jurisdiction of claims against Gregory is conferred by 28 U.S.C. § 1331, as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA). This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35 and 1024.36 of Regulation X.

9.      This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Plaintiffs purchased the Home for their primary residence within the District, Gregory does business in this District, and the conduct complained of took place primarily in this District.

## SUMMARY OF CLAIMS

11.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

12.     Specifically, on January 17, 2013, the CFPB issued the RESPA Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

13.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

14.     Gregory is subject to the aforesaid regulations and each does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", as such term is defined in 12 C.F.R. § 617.700.

15.     Plaintiffs assert a claim for relief against Gregory for breaches of the specific rules under Regulation X as set forth, *infra*.

16.     Plaintiffs have a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

17.     Plaintiffs also assert claims against Gregory based upon state law breach of contract, fraud, and conversion which also entitle Plaintiffs to recover actual damages, statutory damages, punitive damages, costs, and attorneys' fees.

### THE HISTORY OF PLAINTIFFS' LOANS

18.     The owners of Plaintiffs' Loan assigned a portion of that loan to Gregory. In particular, the owners assigned the right to "service" the Loan by, inter alia, assigning the

4

contractual right to collect from Plaintiffs periodic payments of principal, interest, the right to assess and collect late fees and other funds advanced, the right to foreclose in the event of default, as well as the right to collect and maintain escrow deposits for the payment of estimated mortgage insurance, property taxes, and hazard insurance.

19.     Gregory, as a partial assignee of the Loan, was contractually obligated to apply payments made by Plaintiffs in accordance with the terms of the Note, Mortgage, and LMA.

20.     In November and December 2014, Plaintiffs and prior servicer Rushmore entered into the LMA. The LMA was recorded on January 20, 2015 with the Marion County, Ohio Recorder. See *Exhibit 2*.

21.     Thereafter, Plaintiffs continued to make timely payments on the Loan two weeks in advance.

22.     Plaintiffs received a letter from Rushmore, dated August 18, 2015, advising that servicing was being transferred to Santander Bank, NA and/or Statebridge Company, LLC ("Statebridge"), effective September 2, 2015. A copy of this letter is attached as ***Exhibit 3***.

23.     Plaintiffs received a letter from Rushmore, dated August 25, 2015, stating that the August 18, 2015 letter was sent in error. A copy of this letter is attached as ***Exhibit 4***.

24.     Plaintiffs received a letter from Statebridge, dated September 1, 2015, advising that servicing was transferred to it, effective September 2, 2015. This letter also states Selene Partners will no longer accept payments, although Selene Partners was not servicing the Loan nor accepting payments from Plaintiffs to begin with. A copy of this letter is attached as ***Exhibit 5***.

25.     Plaintiffs received a mortgage statement from Statebridge, dated September 1, 2015. A copy of this statement is attached as ***Exhibit 6***.

26.     Plaintiffs received a mortgage statement from Rushmore, dated September 11, 2015. A copy of this statement is attached as ***Exhibit 7***.

27.     Plaintiffs received an escrow disclosure statement from Rushmore, dated September 21, 2015. A copy of this statement is attached as ***Exhibit 8***.

28.     Plaintiffs received a letter from Rushmore, dated September 22, 2015, confirming electronic payment was made on September 22, 2015. A copy of this letter is attached as ***Exhibit 9***.

29.     Plaintiffs received a mortgage statement from Rushmore, dated October 9, 2015. A copy of this statement is attached as ***Exhibit 10***.

30.     Plaintiffs received a letter from AJX, dated October 12, 2015, advising the new owner and servicer, effective September 23, 2015, was AJX and Specialized Loan Servicing, LLC ("SLS"), respectively. A copy of this letter is attached as ***Exhibit 11***.

31.     Plaintiffs received a letter from Rushmore, dated October 15, 2015, confirming electronic payment was made on October 15, 2015. A copy of this letter is attached as ***Exhibit 12***.

32.     Plaintiffs received a letter from Rushmore, dated October 26, 2015, advising that servicing was to be transferred to Gregory, effective November 10, 2015. A copy of this letter is attached as ***Exhibit 13***.

33.     Plaintiffs received a letter from Statebridge, dated November 1, 2015, requesting a copy of the most current insurance policy. A copy of this letter is attached as ***Exhibit 14***.

34.    Plaintiffs received a letter from Rushmore, dated November 18, 2015, with an analysis of payments made since January 1, 2014. A copy of this letter is attached as *Exhibit 15*.

35.    Plaintiffs received a mortgage statement from Gregory, dated December 17, 2015. A copy of this statement is attached as *Exhibit 16.*

36.    These documents from various entities claiming to be the servicer and/or owner of the Note and Mortgage confused Plaintiffs as to whom payments were to be made. However, Plaintiffs attempted to make their payments. The payments were either returned or kept, and it was unknown as to how they were being applied.

37.    Plaintiffs attempted to pay their December 2015 payment on November 12, 2015. A copy of Plaintiffs' Bank Statement is attached as *Exhibit 17*.

38.    Plaintiffs attempted to pay their January 2016 payment on December 9, 2015, but Rushmore would not accept the payment. *See Exhibit 17.*

39.    In December 2015, Rushmore advised the Plaintiffs that they were not required to make a payment for sixty (60) days.

40.    Plaintiffs then contacted Gregory, and were advised that it would take 60 days for the Loan to be transferred. Gregory gave no information on where the payments were to be sent.

41.    Plaintiffs attempted to pay their February 2016 payment on January 13, 2016. *See Exhibit 17.*

### PLAINTIFFS' EFFORTS TO SEEK INFORMATION AND HAVE ERRORS ON THE LOAN CORRECTED

42.    On January 8, 2016, Plaintiffs' counsel sent to the various entities a letter (NOE # 1), pursuant to 12 C.F.R. §§ 1024.35 and 1024.36, pointing out the errors made with respect to the servicing of Plaintiffs' account, and demanding that either an explanation as to why there was

no error or to correct the errors within the time provided by the regulations. A copy of NOE # 1 is attached as *Exhibit 18*.

43.     On January 13, 2016, Statebridge informed Plaintiffs' counsel by email that it was and is not the servicer for the Loan.

44.     On January 29, 2016, Plaintiffs' counsel received a response from Gregory, stating:

> a.     Servicing was transferred to Gregory on November 10, 2015, with notice sent on November 25, 2015 (which Plaintiffs did not receive);
>
> b.     Gregory services the loan on behalf of AJX;
>
> c.     AJX acquired the loan on September 23, 2015 from the previous owner RBSHD;
>
> d.     The October 12, 2015 letter stating the prior servicer was SLS, was incorrect. A copy of this response is attached as *Exhibit 19*.

45.     Gregory gave no proposal as to how the problems that were created by these various entities could be cured. *See Exhibit 19.*

46.     Plaintiffs received a mortgage statement from Gregory, dated on January 19, 2016, advising Plaintiffs that they were due for the August 1, 2015 payment. A copy of this statement is attached as *Exhibit 20*.

47.     On February 25, 2016, Plaintiffs' counsel sent to Gregory a second notice of error ("NOE # 2"), providing proof of payments made that had not been properly credited. A copy of NOE # 2 is attached as *Exhibit 21.*

48.     On March 16, 2016, Plaintiffs' counsel sent to Gregory a third notice of error ("NOE # 3"), pointing out Gregory's agent's unnecessary conduct and Gregory's threats of foreclosure and eviction as harassment. A copy of NOE # 3 is attached as ***Exhibit 22***.

49.     Plaintiffs received a mortgage statement from Gregory, dated March 18, 2016, advising that they were now due for the October 1, 2015 payment. A copy of this statement is attached as ***Exhibit 23***.

50.     Plaintiffs' counsel received a letter from Gregory, dated March 23, 2016, where Gregory further sidestepped its obligations to research and investigate the errors asserted by the Notices of Error. A copy of this letter is attached as ***Exhibit 24***.

51.     Plaintiffs' counsel received a letter from Gregory, dated April 21, 2016, stating the Loan was now due for the December 1, 2015 payment. A copy of this letter is attached as ***Exhibit 25***. Even though Gregory was able to finally partially correct the errors by correcting the payments that were made, there was no offer on how the remaining arrearage would be cured by the lender/servicer since the problem was exclusively the fault of the lender/servicer.

52.     Plaintiffs received a letter from Gregory, dated April 29, 2016, advising of a new owner, U.S. Bank, effective April 11, 2016. A copy of this letter is attached as ***Exhibit 26***.

53.     On June 2, 2016, Plaintiffs' counsel sent to Gregory a fourth notice of error ("NOE # 4"), pointing out Gregory's failure to consider the evidence attached to NOE # 2. A copy of NOE # 4 is attached as ***Exhibit 27***.

54.     Plaintiffs' counsel received a letter from Gregory, dated June 7, 2016, confirming the Loan was due for the December 1, 2015 mortgage payment, and threatening foreclosure. A copy of this letter is attached as ***Exhibit 28***.

55.     On June 16, 2016 and June 30, 2016, Plaintiffs' counsel sent to Gregory two more notices of error ("NOE # 5" and "NOE # 6") demanding Gregory fully correct the problem by resolving the arrearages it caused. Copies of NOE # 5 and NOE # 6 are attached as *Exhibit 29 and Exhibit 30*.

56.     Plaintiffs received a mortgage statement from Gregory, dated June 17, 2016, advising they were now due for the January 1, 2016 payment. A copy of this statement is attached as *Exhibit 31*.

57.     Plaintiffs received a mortgage statement from Gregory, dated July 20, 2016, advising they were now due for the February 1, 2016 payment. A copy of this letter is attached as *Exhibit 32*.

58.     Instead of correcting the errors, Gregory and U.S. Bank initiated foreclosure, on September 12, 2016, against Plaintiffs in the Court of Common Pleas of Marion County, Ohio. That action is captioned *US Bank National Association, as Indenture Trustee v. Jennifer Haas, et al.*, Case No. 2016 CV 0506 (the "Foreclosure Case"). A copy of the Foreclosure Case Docket is attached as *Exhibit 33*.

59.     On November 28, 2016, Plaintiffs filed a Third-Party Complaint against Gregory. See *Exhibit 33*.

60.     Plaintiffs voluntarily dismissed the Third-Party Complaint without prejudice on March 22, 2017. *See Exhibit 33*.

61.     On May 28, 2017, Plaintiffs, through counsel, sent correspondence to Gregory consisting of or otherwise comprising a request for information pursuant to 12 C.F.R. § 1024.36 and a Qualified Written Request pursuant to 12 U.S.C. § 2605(e)(1)(B) requesting detailed

10

information related to Gregory's servicing of the Loan (the "RFI"). A copy of the RFI is attached as ***Exhibit 34***.

62.     Gregory received the RFI on May 30, 2017. See tracking information attached as ***Exhibit 35***.

63.     On May 28, 2017, Plaintiffs, through counsel, sent correspondence to Gregory consisting of or otherwise comprising a request for information pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2) requesting detailed information related to the current owner and servicer of the Loan (the "TILA RFI"). A copy of the TILA RFI is attached as ***Exhibit 36***.

64.     Gregory received the TILA RFI on May 30, 2017. See tracking information attached as ***Exhibit 37***.

65.     On May 28, 2017, Plaintiffs, through counsel, sent correspondence to Gregory consisting of or otherwise comprising a request for payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3) (the "Request for Payoff Statement"). A copy of the Request for Payoff Statement is attached as ***Exhibit 38***.

66.     Gregory received the Request for Payoff Statement on May 30, 2017. See tracking information attached as ***Exhibit 39***.

67.     Gregory did not provide any substantive response to the RFI, TILA RFI, or the Request for Payoff Statement.

68.     On September 13, 2017, Plaintiffs, through counsel, sent correspondence to Gregory consisting of or otherwise comprising a notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to a Request for Information as required by 12 C.F.R. § 1024.36(d). ("NOE # 7"). A copy of NOE # 7 is attached as ***Exhibit 40***.

69.     Gregory received NOE # 7 on September 18, 2017. See tracking information attached as *Exhibit 41*.

70.     On September 13, 2017, Plaintiffs, through counsel, sent correspondence to Gregory consisting of or otherwise comprising a notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to a Request for Information as required by 12 C.F.R. § 1024.36(d). ("NOE # 8"). A copy of NOE # 8 is attached as *Exhibit 42*.

71.     Gregory received NOE # 8 on September 20, 2017. See tracking information attached as *Exhibit 43*.

72.     Gregory did not provide any substantive response to NOE # 7 or NOE # 8. See Gregory Responses attached as *Exhibit 44 and Exhibit 45*.

## THE DAMAGES TO PLAINTIFFS

73.     Because of the wrongful and false "default" status on the Loan, Gregory imposed a number of unwarranted fees on the Loan.

74.     Gregory's actions, in wrongfully and falsely claiming that the Loan is in default, have caused Plaintiffs to suffer harm to their credit.

75.     The Foreclosure Case is a public record which can never be removed. Having a foreclosure filed and pending had had and continues to have a severe, detrimental impact of Plaintiffs' credit.

76.     Plaintiffs have incurred damages as a direct result of the filing of the Foreclosure Case. Further, they have had to pay attorneys' fees and certified mail expenses to prepare and send eight (8) Notices of Error, as well as the RFI, the TILA RFI, and the Request for Payoff Statement in order to gather more information to see what attempts were made to fully fix the

problem and to fully ascertain the identity of any parties that may have acted inappropriately. Additionally, on or about October 5, 2017, Plaintiffs sent to Gregory a ninth and tenth notice of error ("NOE # 9" and "NOE # 10") that are currently awaiting acknowledgments and responses. Copies of NOE # 9 and NOE # 10 are attached as ***Exhibit 46 and Exhibit 47.***

77.     Plaintiffs have incurred legal fees to mount a defense in the Foreclosure Case.

78.     Plaintiffs have suffered damage to their credit score and reporting as on information and belief Gregory has been reporting the plaintiffs delinquent on their mortgage to credit reporting agencies.

79.     Gregory has also imposed late fees and other default related charges on the Plaintiff's account creating the false impression that the Plaintiffs failed to pay their mortgage payments and further exacerbating the conversion of their funds.

80.     The wrongful and willful actions of Gregory have caused Plaintiffs to suffer great emotional distress driven by the fear that despite only being in "default" as a result of Gregory's own errors and refusal to make Plaintiffs' whole, they might lose and be forced to leave their Home. This fear has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress. Additionally, Plaintiffs believe that these occurrences have caused Jennifer Haas' health to deteriorate and have exacerbated her cancer and posttraumatic stress disorder.

81.     In total, Plaintiffs and their counsel sent thirteen (13) separate letters  to Rushmore and Gregory, yet Plaintiffs still currently remain in a wrongful and false "default" status under the Loan despite their continued performance of their obligations.

## COUNT ONE: BREACH OF CONTRACT

82.     Plaintiffs restate and incorporates all of their statements and allegations contained in paragraphs 1 through 81, in their entirety, as if fully rewritten herein.

83.     The Loan is an enforceable contract between Plaintiffs and Gregory.

84.     Although Plaintiffs made their payments according to the LMA, Gregory did not properly apply those payments pursuant to the LMA.

85.     Since Gregory did not properly apply Plaintiffs' payments, Gregory added erroneous charges to the Loan.

86.     Gregory miscalculated the unpaid principal balance and continues to add past due interest and escrow to the Loan balance.

87.     Gregory increased the escrow portion of the monthly mortgage payment substantially and without justification.

88.     Plaintiffs alerted Gregory to the errors alleged but Gregory took no actions to correct its errors.

89.     Plaintiffs have fully performed their obligations pursuant to the LMA by tendering payments due and by otherwise meeting every obligation imposed by the parties' contract.

90.     Implied in the Loan is a covenant of good faith and fair dealing, and by its conduct as alleged *supra*, Gregory breached that covenant and thus breached its contractual obligations under the Loan.

91.     Gregory has failed to act in good faith by failing to correct servicing errors which have been brought to its attention, when doing so was within its discretion as a mortgage loan servicer.

92.     Gregory's actions have caused Plaintiffs to suffer damages. In particular, Gregory has held the Loan in a state of default. As a direct and proximate result Plaintiffs' credit standing has been diminished, and Plaintiffs have had to incur legal fees to retain counsel to mount a defense in the Foreclosure Case, to bring errors to the attention of Gregory, and ultimately to prepare, file, and prosecute this case to remedy the Gregory's wrongful conduct. Plaintiffs have suffered, and continue to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress.

### COUNT TWO: FAILURE TO PROPERLY RESPOND TO NOTICES OF ERROR IN VIOLATION OF 12 C.F.R. § 1024.35(e)

93.     Plaintiffs restate and incorporates all of their statements and allegations contained in paragraphs 1 through 92, in their entirety, as if fully rewritten herein.

94.     12 C.F.R. § 1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

95.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

96.     12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a

statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

97.    NOEs # 1-6 each meet the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). Each was sent to Gregory at the address designated by Gregory for receipt of notices of error; each was received by Gregory at such address.

98.    Plaintiffs have alleged by and through NOEs # 1-6 that Gregory committed multiple errors:

     a.    By failing to properly and timely apply payments made by the Plaintiffs;

     b.    By miscalculating the unpaid principal balance and adding erroneous interest, charges, and fees;

     c.    By failing to properly investigate and correct the errors made by Gregory and its predecessors;

     d.    By failing to properly notify Plaintiffs of the servicing transfer(s);

     e.    By filing the Foreclosure Case without completing required loss mitigation procedures; and

     f.    By failing to correct multiple servicing errors raised by Plaintiffs.

99.    Gregory's actions are a pattern and practice of behavior in conscious disregard for Plaintiffs' rights.

100.    Gregory's actions have caused Plaintiffs damage. In particular, Gregory has held the Loan in a state of default. As a direct and proximate result Plaintiffs' credit standing has been diminished, and Plaintiffs have had to incur legal fees to retain counsel to mount a defense in the Foreclosure Case, to bring errors to the attention of Gregory, and ultimately to prepare, file, and prosecute this case to remedy the Gregory's wrongful conduct. Plaintiffs have suffered, and continue to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress.

101.    As a result of Gregory's actions, Gregory is liable to Plaintiffs for actual damages, statutory damages, costs, and attorneys' fees.

### COUNT THREE: FAILURE TO PROPERLY RESPOND TO REQUESTS FOR INFORMATION IN VIOLATION OF 12 C.F.R. § 1024.36

102.    Plaintiffs restate and incorporates all of their statements and allegations contained in paragraphs 1 through 101, in their entirety, as if fully rewritten herein.

103.    12 C.F.R. § 1024.36(a) provides that "[a] servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

104.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

105.    12 C.F.R. § 1024.36(c) provides that a servicer must acknowledge in writing receiving an information request from a borrower within five (5) days of receipt.

17

106.   12 C.F.R. § 1024.36(d)(1) provides that a servicer must respond to a request for information by either "[p]roviding the borrower with the requested information and contact information, including a telephone number, for further assistance in writing" or "[c]onducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance."

107.   Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides that:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

108.   12 C.F.R. § 1024.36(d)(2)(i) provides that "[a] servicer may not extend the time period for requests for information governed by paragraph (d)(2)(i)(A) of this section."

109.   The RFI constituted a request for information pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(B).

110.   The TILA RFI constituted a request for information pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(A), as it requested information as to "the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan."

111.    The Request for Payoff Statement constituted a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3), as the Request for Payoff Statement requested information as to "an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date."

112.    Pursuant to 12 C.F.R. § 1024.36(c), Gregory was required to acknowledge receipt of the RFI, TILA RFI, and Payoff Request on or before June 6, 2017.

113.    Pursuant to 12 C.F.R. § 1026.36(c), Gregory was required to provide written correspondence to Plaintiffs responding to Request for Payoff Statement on or before June 7, 2016.

114.    Pursuant to 12 C.F.R. § 1024.36(d), Gregory was required to provide written correspondence to the Plaintiffs responding to TILA RFI in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1) on or before June 12, 2017.

115.    Pursuant to 12 C.F.R. § 1024.36(d), Gregory was required to provide written correspondence to the Plaintiffs responding to RFI in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1) on or before July 11, 2017.

116.    Gregory sent correspondence dated June 2, 2017, that refused to provide information to DannLaw because Plaintiffs were represented by McGookey.

117.    Gregory sent correspondence dated September 26, 2017, further refusing to provide information to DannLaw because Plaintiffs were represented by McGookey.

118.    Plaintiffs and Plaintiffs' counsel have not received any written correspondence from Gregory that substantively responds to the RFI, TILA RFI, or Request for Payoff Statement.

119.    Gregory's actions in failing to provide written correspondence to Plaintiffs responding to the RFI, TILA RFI, or Request for Payoff Statement constitute willful violations of 12 C.F.R. § 1024.36(d).

120.    As a direct result of Gregory's actions, Plaintiffs have suffered actual damages. In particular, Plaintiffs have had to pay legal fees in the preparation of NOE # 7, NOE # 8, NOE # 9, and NOE # 10 in an attempt to obtain the information requested by and through the RFI and costs for the mailing of the notices of error via Certified U.S. Mail. Moreover, as a result of the multiple acts of Gregory constituting a pattern and practice of behavior in violation of Plaintiffs' rights, Plaintiffs have suffered, and continue to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress.

121.    Gregory's actions in violation of 12 C.F.R. § 1024.36(d) were part of a continuous and egregious pattern and practice of behavior in conscious disregard for Plaintiffs' rights.

122.    Gregory's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiffs' rights.

**COUNT FOUR: FRAUD**

123.    Plaintiffs restate and incorporates all of their statements and allegations contained in paragraphs 1 through 122, in their entirety, as if fully rewritten herein.

124.    Gregory' actions, in refusing to properly apply payments made and providing conflicting information (when even provided), evidence an intention to force this loan into a foreclosure. These actions were material representations.

20

125.    Gregory's actions were made with knowledge of their falsity or with disregard for whether or not they were true.

126.    Knowing it had no intention to modify the Loan, Gregory deliberately misled Plaintiffs into believing that if they simply made payments, they would not find themselves back into foreclosure.

127.    Gregory knew Plaintiffs were relying on its false promises.

128.    Plaintiffs relied on Gregory's false representations by:

    a.    Continuing to send in payments that were claimed to have not been received or lost;

    b.    Spending substantial time and effort in communicating with the lenders/servicers; and

    c.    Being forced to retain an attorney.

129.    By making the false representations to Plaintiffs in this regard, by knowing them to be false, by knowing that Plaintiffs would rely on them, combined with the fact that they did rely on them, Gregory's actions constitute fraud.

130.    As a direct result of Gregory's actions, Plaintiffs have suffered actual damages. In particular, Plaintiffs have been wrongfully placed in in a default status and this status has severely damaged their credit profile, they have incurred legal fees and costs in an attempt to have Gregory correct the errors, and they had to bring this suit and pay costs and attorneys' fees to seek appropriate relief. Plaintiffs have suffered, and continue to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress.

## COUNT FIVE: CONVERSION

131.     Plaintiffs restate and incorporates all of their statements and allegations contained in paragraphs 1 through 130, in their entirety, as if fully rewritten herein.

132.     Gregory deprived Plaintiffs of the beneficial use of their property and monies.

133.     Gregory wrongfully exercised its dominion and control over Plaintiffs and their property and monies.

134.     Plaintiffs have been damaged by the actions of Gregory.

135.     The actions of Gregory were done intentionally, wantonly, willfully, and with conscious and gross disregard for Plaintiffs' rights.

136.     Gregory acted with malice, fraud, and oppression and, as a result, Plaintiffs are entitled to an award of punitive damages.

**WHEREFORE**, Plaintiffs pray for the entry of judgment in their favor and against Gregory, as follows:

A.     A finding that Gregory breached the Loan;

B.     Awarding Plaintiffs actual damages in an amount to be determined at trial

C.     A finding that Gregory violated 12 C.F.R. § 1024.35;

D.     Awarding Plaintiffs statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to each and every violation of 12 C.F.R. § 1024.35 as alleged, *supra*;

E.     A finding that Gregory violated 12 C.F.R. § 1024.36;

F.  Awarding Plaintiffs statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to each and every violation of 12 C.F.R. § 1024.36 as alleged, *supra*;

G.  Awarding Plaintiffs compensatory damages in an amount to be determined at trial;

H.  Awarding Plaintiffs punitive damages in an amount to be determined at trial;

I.  Awarding Plaintiffs costs and reasonable attorneys' fees; and

J.  Granting such other and further relief as is just and proper.

Respectfully submitted:

/s/ Marc E. Dann
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Dann Law
P.O. Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Attorneys for Plaintiffs Jennifer L. Haas and Paul I. Haas, Jr.*

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

> /s/ Marc E. Dann
> Marc E. Dann (0039425)
> Daniel M. Solar (0085632)
> Dann Law
> *Attorneys for Plaintiffs Jennifer L. Haas and*
> *Paul I. Haas, Jr.*